IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MELVIN KETCHUM                    §
                                  §
v.                                §                    C.A. NO. C-08-193
                                  §
NATHANIEL QUARTERMAN              §

## MEMORANDUM AND RECOMMENDATION
## TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner Melvin Ketchum filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his conviction for sexual assault of a child.  (D.E. 1).  Respondent moves for summary judgment asserting that petitioner's claims are meritless.  (D.E. 27, at 1).  For the reasons discussed herein, it is respectfully recommended that respondent's motion be granted, and this habeas petition be dismissed with prejudice.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254.

## II.  BACKGROUND FACTS

**A.     The Underlying Proceedings.**

Respondent has lawful custody of petitioner pursuant to a judgment of conviction and sentence of the 347th Judicial District Court of Nueces County, Texas, in cause number 05-CR-829-H.  See Ex parte Ketchum, App. No. 69,336-

01, at 23.  Petitioner was convicted of two counts of aggravated sexual assault of a child and sentenced to life in prison.  Id.

On September 2, 2006, the Thirteenth Court of Appeals of Texas affirmed petitioner's conviction and sentence.  Ketchum v. State, 199 S.W.3d 581 (Tex. App. 2006).  His pro se petition for discretionary review was refused on December 20, 2006.  Ketchum v. State, PDR No. 1494-06, at cover.

On January 9, 2008, petitioner filed an application for state writ of habeas corpus; it was denied without a written order on April 9, 2008.  Ex parte Ketchum, App. No. 69,336-01, at cover.  He timely filed the instant petition for writ of habeas corpus on June 13, 2008.[1]  (D.E. 1).

## B.   The Facts Of The Underlying Criminal Case.

The state appellate court established the following facts:

> The victim stated that on or about June 25, 2003, she and her younger brother stayed at Ketchum's house for the night while their dad went out with friends. Around two o'clock in the morning, she and her brother were awakened by Ketchum and his wife, Cena O'Brien (O'Brien testified that neither the victim nor her brother had ever stayed the night with them).  Ketchum asked them if they wanted to go fishing.  The brother said yes and the victim claims she also went because she did not want to leave her brother alone.  Once at the pier, Ketchum left the victim's brother with a family who were fishing.  He then took the victim back to the car, telling her that "little girls need to take naps."  Once they were

_____

[1] Respondent concedes that petitioner exhausted his state remedies.  (D.E. 27, at 9).

both inside the car, he locked the doors and engaged in sexual conduct by digital penetration and contact of sexual organs.

Ketchum, 199 S.W.3d at 586-87.

## III.  **PETITIONER'S ALLEGATIONS**

Petitioner alleges five different bases for habeas relief:

1.  He was denied effective assistance of trial counsel because his attorney:

    a.  failed to adequately investigate his alibi;

    b.  failed to impeach state witness Mickey Boswell;

    c.  failed to argue that police had fabricated evidence;

    d.  failed to put "frame-up" evidence into the record;

    e.  was operating under an actual conflict of interest;

2.  He was denied effective assistance of appellate counsel because his attorney:

    a.  failed to make the voir dire part of the appellate record;

    b.  failed to investigate claims that DVD was altered;

    c.  manipulated trial testimony in her brief to match victim's testimony to that by other state witnesses;

    d.  failed to raise an actual innocence claim;

    e.  was operating under an actual conflict of interest;

3.    The evidence is legally insufficient to support his conviction;

4.    He is actually innocent;

5.    He was denied due process because the state court's review of his habeas application was inadequate.

(D.E. 1, at 7-15).

## IV.  STANDARD OF REVIEW

**A.    Summary Judgment Standard.**

The Fifth Circuit has explained that "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force to federal habeas corpus cases." Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable

4

doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

**B.     Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citations omitted).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law," or was "based on an unreasonable determination in light of the facts."  28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable." Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); see also Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Id. at 694 (citing Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

Id. (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision' and not the written opinion explaining that decision.'"  St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citation omitted).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable.  Montoya v. Johnson,

7

226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 247 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948, n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v.

Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**C.     AEDPA's Deferential Standard of Review Applies To Petitioner's Claims.**

The Texas courts have already considered and rejected all of petitioner's claims.  Ex parte Ketchum, App. No. 69,336-01, at cover.  The claims that he pursues in the instant petition were raised in his state habeas corpus application. (D.E. 1, at 7-15); Ex parte Ketchum, App. No. 69,336-01, at 27-37.  The State filed an Answer and the trial court entered its findings, conclusions, and recommendation that petitioner's claims be denied.  Ex parte Ketchum, App. No. 69,336-01, at 4-19.  The Texas Court of Criminal Appeals then denied his state habeas application without written order based on the findings of the trial court. Id. at cover.

This denial of petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  See Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal v. Puckett, 286 F.3d at 235 ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive.") (citation omitted).  Thus deference to the state court decision is mandated by § 2254(d).  See

Morrow, 367 F.3d at 313.

# V.  ANALYSIS

## A.    Petitioner Was Not Denied The Effective Assistance Of Trial Counsel.

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.), cert. denied, 127 S. Ct. 732 (2006).  To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either.  Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted).

In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) ("strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

Under the second prong of the Strickland two-part test, petitioner may not

simply allege, but must affirmatively prove, actual prejudice resulting from the ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test.  See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding).  In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief.  Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not set forth any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.") (emphasis in original).

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under *Strickland*, but] ... whether the state court's decision – that [the petitioner] did *not* make the *Strickland* showing – was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (*Strickland*), for succeeding on his IAC claim.").

### 1.    Petitioner's claim for failure to investigate.

Petitioner alleges that his trial attorney "failed to investigate for exculpatory eye witnesses for the first date that [petitioner] was accused of ... rape, which he proved to be out of town [sic]."  (D.E. 1, at 10).  Specifically, petitioner complains of counsel's failure to find and to call Kasey O'Brien, the daughter of petitioner's common-law wife, whom petitioner asserts could testify to the victim's "true date" of bleeding.  Id.  He also alludes to "several witnesses" in the trailer park where both he and the victim lived who could have testified that Ms. O'Brien was in the park on that date.  Id.  However, petitioner produced no affidavits of such witnesses.

The record does not support petitioner's claims that counsel failed to investigate his alibi defense.  Trial counsel's affidavit, included in the State's answer to petitioner's state writ application, reveals that counsel hired Stacun Investigations, a private investigation firm, to assist in the pre-trial investigation of the case.  Ex parte Ketchum, App. No. 69,336-01, at 45; (D.E. 5, Ex. A, at 4). Counsel also swore that, despite the fact that petitioner failed a polygraph test, Stacun Investigations nevertheless interviewed "all possible witnesses and helped to develop an alibi ... showing that petitioner was in Houston and could not possibly have committed the alleged crimes on the date that several of the state's witnesses said the crimes occurred."  Id.  Petitioner's own supplement to his state writ application contains questions that Stacun Investigations planned to ask the victim's father.  Ex parte Ketchum, App. No. 69,336-01, Supplement to Writ, Ex. M; see also (D.E. 5, Ex. L-2).

Petitioner alludes to "several witnesses" and to "frame-up evidence" that counsel would have found if he had thoroughly investigated petitioner's alibi. However, the only evidence petitioner provides is Ms. O'Brien's affidavit, which establishes that she was in the trailer park in June 2004, and that she could have testified that the victim's bleeding occurred in 2004, not 2003.  (D.E. 5, Ex. B). Her affidavit, sworn in August 2007 (two years after petitioner's conviction) does

14

not establish that she was available to testify at petitioner's trial. "In order for the appellant to demonstrate the requisite Strickland prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) (citation omitted).

Ms. O'Brien's testimony, even if available, would only have been cumulative of other evidence tending to show that the alleged crime occurred in 2004, not 2003, and that petitioner was out of town in 2004. His trial counsel brought out the discrepancy in dates on cross-examination of State's witness Terry Yeager and the victim's father. See Ex parte Ketchum, App. No. 69,336-01, Reporter's Record, Vol. 4, at 45, 24, 33. It is not ineffective assistance of counsel to fail to put on evidence that is cumulative of other evidence. See Lavernia v. Lynaugh, 845 F.2d 493, 498 (5th Cir. 1988).

Petitioner has failed to demonstrate that counsel inadequately investigated his claims. The only evidence he has produced supporting his claim of ineffective assistance is the affidavit of his stepdaughter, and it does not show that she would have been available to testify. Moreover, even had Ms. O'Brien been available to testify, her testimony would have been cumulative of evidence already presented. Accordingly, it is respectfully recommended that petitioner has failed to show

prejudice as required by Strickland regarding his ineffective assistance of counsel claim for failure to investigate.

### 2.   Petitioner's claim for failure to impeach Mickey Boswell.

Petitioner claims that trial counsel was ineffective because he failed to impeach the State's witness, Mickey Boswell.  He was a fellow inmate with whom petitioner discussed his case while awaiting trial.  Ketchum, 199 S.W.3d at 587. At trial, Mr. Boswell testified that petitioner had admitted to sexually assaulting the victim.  Id.  Specifically, petitioner asserts that counsel was ineffective for failing to impeach Mr. Boswell as to (1) his assertion that petitioner confessed to exposing the victim to pornography; and (2) that he was really a paid informant for the prosecution.  (D.E. 1, at 10).

As evidence that Mr. Boswell was lying when he stated that petitioner admitted to exposing the victim to pornography, petitioner has provided a list of questions allegedly prepared by Mr. Boswell for investigators to ask the victim's father.  Ex parte Ketchum, App. No. 69,336-01, Supplement to Writ, Ex. M; see also (D.E. 5, Ex. L-2).  Petitioner also provides a letter allegedly written by Mr. Boswell to show that the handwriting on the two documents is similar.  (D.E. 5, Ex. L-1).  Those questions do not establish that petitioner never told Mr. Boswell that he exposed the victim to pornography.  Instead, they merely indicate that Mr.

16

Boswell was aware that others might also have exposed the victim to pornography. Counsel's decision not to cross-examine Mr. Boswell on this point falls within the wide range of reasonable professional assistance recognized by Strickland and its progeny.

There is no evidence in the record to support petitioner's claim that Boswell was a paid informant for the prosecution.  Counsel cannot have been deficient for failing to cross-examine a witness on a point on which there was no evidence. Accordingly, it is respectfully recommended that petitioner's ineffective assistance of counsel claim regarding the failure to impeach should be denied.

### 3.    Petitioner's claim for failure to argue that the police fabricated evidence.

Petitioner asserts that "counsel failed to make a coherent argument to judge and jury on prosecution and police fabrication and coercion to have [the victim] testify falsely."  (D.E. 1, at 9).  He further argues that counsel "allowed state's witnesses to mislead jury without correcting or objecting to false testimony by state's witnesses."  Id.  Both of these allegations are related to petitioner's claim that a DVD of the victim's interview with the Children's Advocacy Center, which was shown to the jury, was altered.  Id.

Trial counsel asserted in his affidavit that "[a]t trial, my co-counsel and I brought the issue of the DVD copy of the interview of the child victim to the

17

court's attention because [petitioner] initially had concerns it differed from the VHS copy produced to us in discovery." Ex parte Ketchum, App. No. 69,336-01 at 45; (D.E. 5, Ex. A, at 4).  However, once the court allowed the defense to compare the VHS and DVD copies, "[petitioner] told Mr. Story he did not see anything different on the video.  Mr. Story informed the court of this." Id.  Trial counsel also testified at the hearing on a motion for new trial that the VHS copy of the interview had also been included in the record, although neither he nor his co-counsel could identify any difference between it and the DVD copy.  Ex parte Ketchum, App. No. 69,336-01, Reporter's Record, Vol. 5, at 46-47; see also id. at Vol. 6 (copies of both the DVD version and the VHS version of the interview were admitted into evidence).

Petitioner provides no evidence other than his bare assertion that the DVD was altered to support his claim that his counsel should have questioned witnesses and argued to the jury that the police fabricated evidence.  The record reveals that his concerns about the difference between the VHS and the DVD copy of the interview with the victim by the Children's Advocacy Center were adequately addressed.  Petitioner viewed the videos with his attorneys; his counsel entered the VHS copy into the record and the court was made aware of his concerns.  There is nothing to suggest that counsel's conduct fell outside the wide range of

professional assistance allowed by <u>Strickland.</u>  Accordingly, it is respectfully

recommended that petitioner's claim of ineffective assistance of counsel regarding

fabricated evidence be denied.

> **4.    Petitioner's claim for failure to put "frame-up" evidence into the record.**

Petitioner complains that counsel "worked with prosecution to keep out of

record all the fabrication ... and failed to inject into record the fram [sic] up

evidence."  (D.E. 1, at 10).  The sole instance of alleged fabrication concerned the

DVD; he offers no further evidence other than bare assertions of a "frame-up" to

support his claim.  The State's witnesses were adequately cross-examined on the

disparity in the alleged dates of the offense.  <u>See</u> <u>Ex parte Ketchum</u>, App. No.

69,336-01, Reporter's Record, Vol. 4, at 45, 24, 33.  Again, counsel cannot have

been deficient in failing to pursue an argument for which there was no evidence.

Accordingly, it is respectfully recommended that petitioner's claim of ineffective

assistance regarding "frame-up" evidence be denied.

> **5.    Petitioner's claim that his counsel was operating under an actual conflict of interest.**

Finally, petitioner asserts that his trial counsel was operating under a conflict

of interest.  He alleges that his trial counsel was conflicted because he knew State's

witness Deputy Zenner, who in turn worked for Constable Sherwood, who in turn

is related to State's witness Terry Yeager, who in turn had a "grandma kind of relationship" with the victim.  (D.E. 4, at 9).  Essentially, petitioner argues that counsel was friendly with certain State witnesses and, therefore, failed to properly cross-examine them.

The Supreme "Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest." Strickland, 466 U.S. at 692.  However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)).  Consequently, application of the actual conflict standard articulated in Cuyler is limited.

The Fifth Circuit has limited the application of Cuyler to cases of "multiple representation." Beets v. Scott, 65 F.3d 1258, 1265-66 (5th Cir. 1999) (en banc). The Beets court explained that "Strickland offers a superior framework for addressing conflicts outside the multiple or serial client context." Id. at 1265.  The Fifth Circuit further elaborated that "[i]n stark contrast to multiple representation situations, there is little meaningful distinction between a lawyer who inadvertently fails to act and one who for selfish reasons decides not to act." Id. at 1271; see also Moreland v. Scott, 175 F.3d 347, 349 (5th Cir. 1999).  ("Under Beets, cases in

which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed <u>Strickland</u> standard.") (citation omitted).

Even assuming that the relationship between trial counsel and certain state witnesses that petitioner alleges actually is a conflict, it falls squarely into the category of conflicts dealt with by <u>Beets</u> and <u>Moreland</u>.  He claims that counsel failed to act because of his friendship with state's witnesses and with local police. Pursuant to the <u>Strickland</u> standard, nothing in the record indicates that counsel's performance was deficient.  Petitioner has failed to establish that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result."  <u>Strickland</u>, 466 U.S. at 686. Accordingly, it is respectfully recommended that petitioner's claim for ineffective assistance regarding a conflict of interest should be denied.

**B.    Petitioner Was Not Denied The Effective Assistance Of Appellate Counsel.**

The proper standard for evaluating claims of ineffective assistance of appellate counsel is the one enunciated in <u>Strickland</u>.  <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).  Therefore, petitioner "must first show that his counsel was objectively unreasonable."  <u>Id.</u>  He also has to demonstrate that but for his counsel's unreasonable conduct, "he would have prevailed on his appeal."  <u>Id.</u>

21

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Id. at 288 (citing Jones v. Barnes, 463 U.S. 745 (1983)).

### 1.   Petitioner's claim for failure to make the voir dire part of the appellate record.

Petitioner's claim that the voir dire was not included in the appellate record is wholly unsupported by that record.  The voir dire appears in the record.  See Ex parte Ketchum, App. No. 69,336-01, Reporter's Record, Vol. 7 (voir dire record). In an affidavit, his appellate counsel swore that she "did check out the voir dire portion of the appellate record from the Court of Appeals and [she] read it."  Ex parte Ketchum, App. No. 69,336-01 at 48; (D.E. 5, Ex. A, at 7).  She further asserts that "[b]ecause there was no reversible error in the voir dire part of the record, I did not raise any issue concerning voir dire in petitioner's direct appeal."  Id. Petitioner claims that "petitioner and counsel had discussed reversible error did occurred [sic]," but he fails to identify the reversible error he believes appellate counsel should have raised.  (D.E. 1, at 11).  Consequently, petitioner fails to establish either that counsel was deficient in failing to raise a claim based on the voir dire, or that he was prejudiced by that deficiency.  Accordingly, it is respectfully recommended that petitioner's ineffective assistance of appellate counsel claim regarding the voir dire record on appeal be denied.

## 2. Petitioner's claim for failure to investigate claims that DVD was altered.

Petitioner claims that counsel failed to "interview exculpatory witnesses to the viewing of child's video that was played for jury, which was missing exculpatory testimony." (D.E. 1, at 11). He further alleges that "counsel failed to get affidavits from witnesses that was [sic] present during playing of VHS tape during recess at trial, that could testify that trial counsel played only VHS tape and not DVD at recess." Id. The DVD was admitted without objection at trial. Ex parte Ketchum, App. No. 69,336-01, Reporter's Record, Vol. 3, at 124. "[T]he Texas contemporaneous objection rule has consistently barred the consideration of an objection to evidence on a ground not asserted at trial." Hogue v. Johnson, 131 F.3d 466, 486 n.37 (5th Cir. 1997) (internal citations omitted). Consequently, where there was no objection to the admission of the evidence at trial, there was no ground to appeal the admission of the evidence. Appellate counsel cannot be said to have acted unreasonably in not raising a claim she was procedurally barred from raising on appeal. Accordingly, it is respectfully recommended that petitioner's ineffective assistance of appellate counsel claim regarding the altered DVD be denied.

### 3.     Petitioner's claim that counsel manipulated the victim's testimony in the appellate brief to match the other state's witnesses' testimony.

Petitioner also claims that appellate counsel "manipulated child's trial testimony to try to match jailhouse informant's false testimony" and that "she also argued [his] direct appeal brief in a way to bolster state's case against him."  (D.E. 1, at 11-12).  His appellate counsel testifies in her affidavit that she "simply summarized the evidence in the record to the extent necessary." Ex parte Ketchum, App. No. 69,336-01, at 48; (D.E. 5, Ex. A, at 7).  She asserted that "Mr. Boswell's testimony tended to corroborate the victim's testimony to some extent. But, this corroboration was present in the record and not the product of any manipulation on my part." Id.  Finally, she claims that "[t]o my recollection, the child testified at trial that Petitioner put his penis in contact with her private.... Mickey Boswell, the 'jailhouse snitch' testified that Petitioner confessed to him that he had ... rubbed his penis on her vagina." Compare id. with Ex parte Ketchum, App. No. 69,336-01 at 89 (similar statement of facts in the appellate brief); see also App. No. 69,336-01, Reporter's Record, Vol. 3, at 71, 156, 187 (this version is consistent with the testimony by Mr. Boswell and the victim at trial).  Thus, there is nothing in the record which supports petitioner's claim that counsel wrote the brief in such a way as to skew the facts against him, and the

24

claim is meritless. Accordingly, it is respectfully recommended that petitioner's ineffective assistance of appellate counsel claim regarding the manipulation of testimony be denied.

### 4.    Petitioner's claim for failure to raise an actual innocence claim.

Petitioner asserts that his "appeal counsel failed to raise an actual innocence claim on the police report from [September 13, 2003] which petitioner showed her how state's witnesses were framing up petitioner with evidence of [victim's] bleeding and fabricating story about June 26, 2003." (D.E. 1, at 12); see also Ex parte Ketchum, App. No. 69,336-01, Supplement to Writ, Ex. J (September 13, 2003 police report). It details an incident in which the victim's father apparently punched the window of petitioner's vehicle, causing damage. Id. Presumably, petitioner is offering this police report as evidence that the victim's father had motive to frame him for the alleged offense.

It is possible that an ineffectiveness claim may be based on counsel's "failure to raise a particular claim, but it is difficult to show that counsel was incompetent." Smith, 528 U.S. at 288. Counsel is not required to raise every nonfrivolous claim. Id. Appellate counsel raised five points of error on appeal, arguing, inter alia, that the evidence was factually insufficient to support the verdict. Ex parte Ketchum, App. No. 69,336-01 at 74. That appellate counsel

chose to argue that the evidence was factually insufficient rather than that the police and the victim's family had a motive to frame petitioner is not a decision that "so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having a just result." Strickland, 466 U.S. at 686.

Moreover, petitioner has failed to make the required showing of prejudice. He fails to demonstrate that there is a reasonable probability that, but for appellate counsel's failure to raise a claim of actual innocence, he would have prevailed on appeal. The evidence he presents in support of his claim (the police report) is insufficient to support such a claim. Thus, because petitioner has failed to make the required showing of unreasonable conduct by counsel and prejudice, his claim for ineffective assistance of appellate counsel is meritless. Accordingly, it is respectfully recommended that petitioner's ineffective assistance of appellate counsel claim regarding his actual innocence should be denied.

### 5.    Petitioner's claim that appellate counsel had an actual conflict of interest.

Petitioner alleges that appellate counsel had an actual conflict of interest. Specifically, he alleges that "appeal counsel also had a conflict of interest against the petitioner for telling her three times to with draw [sic] from his case and once was before the judge at a hearing." (D.E. 1, at 12). He further claims that "appeal

counsel's relationship with trial counsel caused conflict of interest, which affected adquacy [sic] of her representation."  (D.E. 4, at 22).  Petitioner does not elaborate on the nature of the relationship he perceives between trial and appellate counsel; the only evidence of any relationship between the two in the record is that trial counsel recommended appellate counsel to petitioner.  It is apparent, however, that petitioner is not alleging the multiple or serial representation situation to which Cuyler applies, and that therefore the applicable standard is Strickland.

Petitioner fails to identify any way in which appellate counsel's alleged conflict of interest affected the adequacy of her representation, aside from the claimed errors analyzed above under the Strickland standard.  Pursuant to that standard, petitioner has failed to demonstrate that counsel's performance was deficient and to demonstrate that he suffered prejudice as a result of counsel's alleged errors; therefore, the state court's denial of habeas relief on this ground was not an unreasonable application of the law, and it is respectfully recommended that petitioner's claim of ineffective assistance of appellate counsel regarding a conflict of interest be denied.

## C.    The Evidence Is Legally Sufficient To Support The Conviction.

Petitioner claims the evidence was legally insufficient to support his conviction.  (D.E. 1, at 13).  In determining whether the evidence is sufficient to

support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original) (citation omitted); see also Dupuy v. Cain, 201 F.3d 582, 589 (5th Cir. 2000) (citing Jackson).  "[A]ll reasonable inferences are drawn in support of the verdict." United States v. Cyprian, 197 F.3d 736, 740 (5th Cir. 1999).  Furthermore, the court must accept the credibility choices of the jury, and must not reweigh the evidence.  Id.

Petitioner does not specifically allege that the State failed to prove any element of the offense.  Rather, he asserts that the State's witnesses were inconsistent and that his alibi evidence was more credible than the State's argument.  In effect, petitioner is asking the Court to reweigh the evidence and to second-guess the credibility determinations of the trier of fact.  As the Fifth Circuit explained in Cyprian, such second-guessing of the jury is not permitted when reviewing a sufficiency of the evidence claim.  Viewing the evidence in the light most favorable to the prosecution, and accepting the credibility determinations of the jury, a rational trier of fact could have found petitioner guilty beyond a reasonable doubt.  Therefore, the decision of the state court to deny relief on this

ground was not unreasonable, and it is respectfully recommended that petitioner's legal insufficiency claim be dismissed.

## D.     Actual Innocence Is Not An Independent Ground For Habeas Relief.

Petitioner raises in several instances his actual innocence in his petition. (D.E. 1, at 13; D.E. 4, at 24; D.E. 31, at 9).  Actual innocence is not an independent ground for habeas relief.  See Lucas v. Johnson, 132 F.3d 1069, 1074 (5th Cir. 1998) ("Claims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.") (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)).  Actual innocence may be asserted in a federal habeas petition in order to obtain review of constitutional claims that are procedurally barred, as a function of the fundamental miscarriage of justice exception, but it may not be asserted as an independent ground for habeas relief.  See Schlup v. Delo, 513 U.S. 298, 314-17 (1995).

Petitioner has not asserted that any of his claims are procedurally defaulted; therefore his actual innocence claim cannot be used as a gateway pursuant to Schlup.  Consequently, his actual innocence claim must be read as an independent claim, and it is respectfully recommended that, as such, it fails as a basis for federal habeas relief.

**E.      Infirmities In State Habeas Proceedings Are Not Grounds For Federal Habeas Relief.**

Finally, Petitioner asserts that his due process rights were violated because the Texas Court of Criminal Appeals never received his habeas corpus paperwork and because both the Court of Criminal Appeals and the trial court "ignored evidence of fram [sic] up evid [sic] to convict petitioner, because of nature of offense and police officer's family was state's witnesses."  (D.E. 1, at 14).  These claims are not supported by the record.  The state record includes petitioner's state habeas petition, as well as the documentation he sent in to supplement his petition.  See Ex parte Ketchum, App. No. 69,336-01 at 22-40; Ex parte Ketchum, App. No. 69,336-01, Supplement to Writ.

Even if petitioner's claim had merit, however, it is not cognizable by this Court.  "[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."  Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) (citing Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992)).  "An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention, and not the detention itself.'"  Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) (citations omitted).  Thus, petitioner's claim that his due process rights were violated by the state court in reviewing his state habeas petition cannot constitute a

ground for federal habeas relief, and it is respectfully recommended that it be dismissed.

## VI.  <u>CERTIFICATE OF APPEALABILITY</u>

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court may <u>sua</u> <u>sponte</u> rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  To warrant a grant of

the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate the denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability.

## VII.  **RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 27), be granted and that the petition be dismissed with prejudice.  Moreover, it is respectfully recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 16th day of September 2008.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).